## CHATTEL MORTGAGES COVERING AFTER ACQUIRED PROPERTY.

[Circuit Court of Wood County.]

BENJAMIN NETZORG v. THE NATIONAL SUPPLY COMPANY.

Decided, November 25, 1905.

*Executory Contract—Embodied in Chattel Mortgage Covering After-Acquired Property—Title Passes to Mortgagee, When.*

Where a chattel mortgage creates no lien upon after-acquired property, it may contain an executory contract that title to such after-acquired property shall pass to the mortgagee; and where a mortgage contains such a provision, title passes to the mortgagee when the after-acquired property is delivered to him by the mortgagor, and not until such delivery is made.

WILDMAN, J. (orally); PARKER, J., and HAYNES, J., concur.

In this case we have presented a very interesting question as to the legal effect of a clause in a chattel mortgage seeking to cover property not owned by the mortgagor at the time of the execution of the instrument.

The case was submitted to the court below upon the pleadings and an agreed statement of facts, together with the chattel mortgage referred to in the pleadings, and the court gave judgment for the plaintiff below, the National Supply Company, against the present plaintiff in error, Benjamin Netzorg. The chattel mortgage which is attached to the bill of exceptions described a number of articles, specifying them in detail, they being certain implements and tools used for the purpose of drilling oil wells. In said description in one part of the mortgage, this language is used:

"Also all other fixtures, machinery fittings, connections and materials which the mortgagor may hereafter acquire by purchase or exchange and which shall be added to and used in connection with the above wells or in connecting same with powers and derricks and operating of said wells, shall become a part of and be included in this mortgage."

The suit below was a replevin suit instituted by the National Supply Company against Netzorg to recover possession of what the petition denominates "two big-hole bits" together with certain other articles described in the petition, but which other articles are not now connected with the controversy. The sole question is as to the title and right of possession of the bits mentioned. These bits were not among the items specifically mentioned in the chattel mortgage, but they were subsequently acquired by the mortgagor after the going out of use of two bits that were specifically mentioned.

A clearer understanding of the case will perhaps be obtained from reading the agreed statement of facts, which is as follows:

"First. That on the 21st of February, 1903, Samuel E. Niece gave to the National Supply Company the mortgage hereto attached. That in said string of tools there was included two big-hole bits; that said bits were afterwards worn out, and said Samuel E. Niece after the date of the giving of said mortgage purchased of the Hardy Machine Company two big-hole bits, being the bits replevined in this action. That the same were placed with the string of tools and used in place of the two bits that had been worn out and were included in the mortgage. One of the bits was actually used in completing a well, and the other was dressed up ready to be used, but was not needed in the completion of the well.

"Second. That the National Supply Company took possession afterwards of the tools and attempted to take possession of these two bits, and was prevented from obtaining possession of them by Samuel E. Niece, in whose possession they were at the time. That after the attempt of the National Supply Company to get possession of said tools, said Samuel E. Niece sold the same to the defendant in this case, Benjamin Netzorg, for a valuable consideration. It is agreed that the value of said bits is thirty-five dollars.

"Third. It is also agreed that the mortgage above referred to was filed with the township clerk of Henry township on the 24th day of February, 1903, and was refiled on the 15th day of February, 1904.

"Fourth. It is also further agreed the National Supply Company have possession of the tools described in this action at the present time and at the commencement of this action.

"Fifth. It is also further agreed that the mortgagor, Samuel E. Niece, never delivered possession of said big-hole bits to the

mortgagee and never agreed to deliver the same to them, and refused to have the same considered in said mortgage, and after the purchase of these bits Niece never consented to deliver them to the National Supply Company and never did deliver them to the National Supply Company, but that they obtained possession thereof by replevying the same from the defendant in this action.''

This agreed statement of facts, together with the chattel mortgage, constitute the only evidence submitted to the court below. The court having rendered a judgment in favor of the National Supply Company, holding that the mortgage covered these two bits acquired as shown after the execution of the mortgage, Netzorg filed a motion for a new trial, which was overruled, and thereupon the petition in error was filed here for a reversal of the judgment below.

I will not tarry to examine the numerous cases which have been cited by counsel from other jurisdictions in which there appears a seeming conflict of authority as to the effect of such a clause as we find in this mortgage, as in my judgment we have decisions in Ohio which are decisive of the controversy, rendering it unnecessary to search elsewhere. The first case to which attention should be directed is that of *Chapman* v. *Weimer*, 4 O. S., 481, the syllabus of which is as follows:

''A chattel mortgage purporting to create a lien on the stock in a grocery, and also on such as should be subsequently acquired by the mortgagor, creates no lien on the subsequently acquired property.

''When such mortgage authorizes the mortgagee to take possession of the property secured and attempted to be secured, it is a continuing executory contract; and when the mortgagor acquires such property after the execution of the mortgage, and actually delivers the same to the mortgagee, the latter thereby acquires a valid lien on such subsequently acquired property.''

Judge Kennon rendered the opinion, and on page 485 he says:

''It may be safely said that Chapman did not, by the mere execution of this mortgage, acquire any legal title to or lien on such subsequently acquired property. But when, after the execution of the mortgage, and after the mortgagor had acquired title to property not owned by him nor in his power to deliver

at the time of the execution of the mortgage, he does acquire the
title and possession of such property, and actually delivers the
same to the mortgagee, a very different question arises.''

I might read much more in elaboration of the idea suggested
in the syllabus, but I will not take the time for it.   In the 10th
O. S., 391-2, is the case of *Coe* v. *R. R. Co.*, which incidentally
touches the same question.   The matter is not precisely the same
where the rights of a railroad company are affected, because to
some extent they are affected by legislation granting powers to
railroad companies to pledge not only existing property but the
income therefrom.   But in this case there is a recognition of the
doctrine enunciated in the 4th O. S.   I read from page 391 of
the opinion:

''As to the transfer of a title, a mortgage of goods and chat-
tels to be subsequently acquired would stand upon the same
ground in law and equity.   I could give no 'legal title, nor any
equitable title, to any specific goods,' citing *Congreve* v. *Evetts*,
10 Exch., 298, Parke, B.   It would amount to no more than an
executory contract.   In equity it might be regarded as a claim
for a title, to be perfected by possession taken with the assent
of the grantor or under his authority, or by a specific perform-
ance.''

The doctrine was recognized and further elaborated in the
case of *Francesco* v. *Ryan*, 54 O. S., 307-8. I read the second and
third syllabi:

''A stipulation in such a mortgage, that it shall be a lien on
any goods the mortgagor may thereafter purchase and place in
stock to supply the place of those he should sell, while not cre-
ating a present lien, nor a lien when and as the goods are pur-
chased, constitutes a valid contract for a lien on such after-ac-
quired property; and possession thereof lawfully taken by the
mortgagee has the same effect of protecting it in his hands from
the claims of the property owned by the mortgagor at the time
of the execution of the mortgage.

''Sufficient authority is conferred on the mortgagee to take
possession of all the property on which the mortgage purports
to create a lien, including the after-acquired property, as well
as the stock owned when the mortgage was executed, by a clause
therein which provides that if, at any time before the maturity

of the debt, the mortgagee shall 'deem it necessary for his more perfect and complete security,' he may enter the store or place where the goods may be, and 'take and carry away the mortgaged property,' and dispose of the same at public or private sale.''

And on page 315, the judge, speaking for the court, says:

''Courts have differed in regard to the effect of mortgages intended to create a lien on goods which the mortgagor did not own at the time of its execution, but which it was contemplated he would hereafter acquire. The difference has arisen chiefly from the nature of the jurisdiction exercised by the courts. ''Those of equitable cognizance, applying the maxim that equity regards that as done which ought to be done, hold that under such a mortgage a lien attaches to the property as soon as it comes to the mortgagor's ownership; while at law, it has been held that it creates no present lien, nor one as the property is acquired, but as between the parties it operates only as a contract for a lien, which may be made effectual for the benefit of the mortgagee by possession lawfully obtained of the property, not only as against the mortgagor himself, but also as against any subsequent legal process issued against him, or disposition attempted to be made by him. Whether, or in what instance, in actions under a civil code like ours, by which the two systems of remedial justice are blended and administered in the same courts and often in the same proceeding, the equitable rule should be applied, is a question upon which the courts are not agreed, and one whose decision is not necessary in this case.''

Then the decision of *Chapman* v. *Weimer*, 4 O. S., *supra*, receives attention, the court here not disputing the principle as there announced. The substance of this decision in *Francisco* v. *Ryan* is that the power given to the mortgagee to take possession of the property when he deems it necessary for his own more effectual security, applies not only to the property actually covered by the mortgage, but also the property which the parties afterwards acquire. It is manifest however from all these decisions that the mortgagee has no lien upon the property under the Ohio rule until the moment when he acquires possession of the property.

In this case the agreed statement of the facts expressly informs us that the mortgagee did not obtain possession of the property

prior to its sale by Niece to Netzorg. He attempted to do it, but possession was refused, and this fact is two or three times repeated in the agreed statement. The property still remained in the possession of Niece until the sale to Netzorg. It was then transferred to Netzorg and replevined from him by the National Supply Company, and our judgment is that under the circumstances Netzorg received title to the property. It was not said that he was a *bona fide* purchaser in this statement; that he had no knowledge of the existence of the executory contract between Niece and the National Supply Company, but we think under the authorities that that makes no difference. No lien had been acquired by the National Supply Company. It is a case where there was only an executory contract which might or might not be performed.

I do not lose sight of the suggestion made by counsel for the defendant in error in an able argument, that these articles were a part of a string of tools; that they were to supply the place of some which might wear out, and that they were to be used in common with the property mortgaged. Reference was made in argument to an after cited case of the repair of a rifle by giving it a new stock, wherein it was held that a chattel mortgage upon the rifle would cover not only the original implement, but also the repairs. Another case is that in 3d Sandford, 65 N. Y. Superior Court, *Southwarth* v. *Ishong*, where additional sails were applied to a vessel. A mortgage had been placed upon the vessel, and the mortgage was held to be a lien not only on the vessel but also on some new sails. An examination of that case however shows that the question arose after possession had been taken by the mortgagee, so that even if it were independent property, under our rule, the mortgagee having taken possession, his mortgage would cover the sails as well as the vessel.

We do not think these two bits are to be likened to the case of a part of the rifle which is repaired or any other implement or tool so repaired. It is not to be doubted that a mortgage placed upon some one article, will cover that article as subsequently changed, provided the integrity of the article remains. Precisely as with a mortgage upon a house and lot, where the mortgage will remain a lien upon the house although painted and

improved during the time of the existence of the mortgage and before it is foreclosed.

Our judgment is that Netzorg should here prevail, that the title and possession to and in this property remained in him up to the time of the suit in replevin, and the property having gone into the possession of the mortgagee, the National Supply Company, there should be a judgment upon the agreed statement of facts and the pleadings for the amount agreed upon as the value of the property, with interest from the date of the taking possession by the National Supply Company, and costs.

I should add that some reference was made to the case of *Redd v. Ginsburg*, 64 O. S., pages 11-24, but we think that the case does not aid the present inquiry. The question arose there in reference to a railroad mortgage. It does not seem to have special bearing upon the principles involved in this case, and it does not alter our judgment. I have already invited attention to the case in the 10th O. S., with the statement that statutes conferring powers upon railroad companies to mortgage not only property, but the income thereof, induced the holding that a mortgage of after-acquired property which was the result of income would create a lien upon that property.

We do not think that these cases of railway usages in any way disturbs the principle applied to mortgages among or between individuals.

*S. P. Harrison*, for plaintiff.

*Ira C. Taber*, for defendant.